IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02333-LTB-CBS

LAFAYE ADAMS,
    Plaintiff,
v.

FEDEX GROUND PACKAGE SYSTEM, INC.,
MARK HARRIS, in his official capacity as Senior Manager, and in his individual capacity, and
MARK POOLE, in his official capacity as P & D Manager, and in his individual capacity
    Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

    This civil action comes before the court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.  Pursuant to the Order of Reference dated January 27, 2012 (Doc. # 6) and the memorandum dated June 22, 2012 (Doc. # 27), this matter was referred to the Magistrate Judge.  The court has reviewed the Motion, Plaintiff's Response (filed August 22, 2012) (Doc. # 48), Defendants' Reply (filed September 4, 2012) (Doc. # 49), Plaintiff's Second Amended Complaint (filed January 4, 2013) (Doc. # 55), Defendants' Supplement to the Motion to Dismiss (filed January 24, 2013) (Doc. # 56), Plaintiff's Response to Defendants' Supplement (filed February 7, 2013) (Doc. # 57), the entire case file, and the applicable law and is sufficiently advised in the premises.

I.    Statement of the Case

    Ms. Adams became a "non-driving independent contractor" upon entering into a "Pickup and Delivery Contractor Operating Agreement" with FedEx Ground Package System, Inc. ("FedEx") on April 30, 2009.  (*See* Complaint (Doc. # 2) at 4, 6 of 10; Second Amended Complaint ("SAC") at ¶¶ 19, 26-27, 197).  She purchased a route that provided pick-up and

1

delivery services from FedEx's Centennial, Colorado terminal. (*See* Doc. # 55 at ¶¶ 7, 25-27). Her business relationship with FedEx quickly deteriorated, resulting in FedEx's termination of the Operating Agreement on or about September 3, 2009 for breach of the Operating Agreement. (*See* Doc. # 55 at ¶ 13). Pursuant to the Operating Agreement, Ms. Adams filed a demand for arbitration on or about October 14, 2009. (*See* Demand for Arbitration (Doc. # 26-2)).[1] In her Demand for arbitration, Ms. Adams described the nature of the dispute as "Wrongful termination and unclean hands by FedEx Ground. Retaliation and Discrimination based on sex, race and age. I am seeking monetary compensation for the lost [sic] of my contract or reinstatement of contract and replacement of truck," $85,000.00, attorney fees, and arbitration costs. (*See* Doc. # 26-2). On February 10, 2011, following a two-day hearing, the Arbitrator denied Ms. Adams's claims. The Arbitrator determined that

> the evidence is clear that the problems experienced by Federal Express Ground with this non-driving contractor claimant (LaFaye Adams) were overwhelming and unprecedented. The problems included extreme levels of pick-up and delivery failures (e.g. the unchallenged testimony of Mark Harris was that the level of such situations from Mrs. Adams in four months exceeded those experienced by all 24 other contractors in the entire year of 2010), cooperation issues (e.g., demanding that all communication be in writing), failure of service issues (e.g., not having qualified drivers and back-up drivers on a full-time basis), serious integrity problems engaged in by employees of Mrs. Adams (e.g. falsifying company

---

[1] Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and "'matters of which a court may take judicial notice.'" *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). If a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Ms. Adams mentions the Operating Agreement and the arbitration in her complaint (*see, e.g.,* Doc. # 55 at ¶¶ 19, 26, 28, 39-41, 43-44, 56, 62-63, 80-81, 83-86, 91, 93-94, 99-116, 177, 179-80, 184, 189-90, 192-94, 197-200, 203, 208) and does not dispute the authenticity of the attachments to Defendants' Motion. Accordingly, the court may consider the Operating Agreement and arbitration documents. *Cf. GFF Corp.*, 130 F.3d at 1385 (concluding that district court properly considered letter that was "frequently referred to and quoted from" in the amended complaint).

> records relating to pick-ups and deliveries) and noncompliance with federal regulatory standards (e.g., violations of DOT safe driving requirements). These problems also operated as breaches of paragraph 1.10 of the Operating Agreement and justified the respondent's termination of the contract here.

(*See* Standard Award of Arbitrator (Doc. # 26-3)).

Proceeding *pro se*, Ms. Adams initiated this lawsuit on September 6, 2011. (*See* Doc. # 1). The operative pleading is Ms. Adams's Second Amended Complaint ("SAC") (Doc. # 55). The SAC is Ms. Adams's fifth pleading in this case. (*See* Docs. # 1 and # 2 (initial Complaint), Doc. # 12 (Amended Complaint, withdrawn by Ms. Adams on May 1, 2012 (*see* Courtroom Minutes/Minute Order (Doc. # 21))), Doc. # 23 (revised Amended Complaint), and Doc. # 55 (SAC)). Defendants filed motions to dismiss her first three pleadings. (*See* Doc. # 12 (Motion to Dismiss initial Complaint), Doc. # 18 (Motion to Dismiss Amended Complaint), and Doc. # 29 (Motion to Dismiss revised Amended Complaint)). On January 4, 2013, the court permitted Ms. Adams to file her Second Amended Complaint ("SAC"), indicated it would apply the arguments asserted in Defendants' pending Motion to Dismiss (Doc. # 29) to the SAC, and permitted Defendants and Ms. Adams to file supplemental briefs. (*See* Order (Doc. # 54)). Ms. Adams brings 10 claims for violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2 *et seq.* (Title VII"), 42 U.S.C. § 1983, 29 U.S.C. § 62[3] *et seq.* ("ADEA"), "the Equality Act of 2010" (a British law), and the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101 *et seq.*, and for fraudulent inducement, defamation and libel, "Economic Duress," and declaratory judgment under Colorado common law. (*See* Doc. # 55).

II.   Standard of Review

Defendants move to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b). Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." While factual assertions are taken as true, legal conclusions are not. The burden is

on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To survive dismissal under Rule 12(b)(6) for failure to state a claim, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III.   Analysis

A.   Preclusion of Ms. Adams's Claims Based on Prior Arbitration Award

Defendants argue that, based on the arbitration award, collateral estoppel precludes Ms. Adams from relitigating her claims that the Operating Agreement was wrongfully terminated for any improper reason, including discrimination. "The doctrine of collateral estoppel, also known as issue preclusion, attaches only [w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *B-S Steel of Kansas, Inc. v. Texas Industries, Inc.*, 439 F.3d 653, 662 (10th Cir. 2006) (internal quotation marks and citations omitted). The doctrine of issue preclusion will "bar a party from re-litigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Burrell v. Armijo*, 456 F.3d 1159, 1172 (10th Cir. 2006) (internal quotation marks and citation omitted). "[C]ollateral estoppel requires an identity of issues raised in the successive proceedings and the determination of these issues by a valid final judgment to which such determination was essential." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1990) (citation omitted). Four elements are required to apply the doctrine of issue preclusion: (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior

action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Id.* (citation omitted).

The Tenth Circuit has previously applied collateral estoppel to an arbitration award. *Coffey v. Dean Witter Reynolds Inc.*, 961 F.2d 922, 924-28 & n. 4 (10th Cir. 1992) ("The doctrine of collateral estoppel . . . bars relitigation of legal or factual issues that have previously been decided through arbitration."). *See also Rodriguez v. Bar-S Food Co.*, 567 F. Supp. 1241, 1245 (D. Colo. 1983) (Colorado law recognizes that arbitration award may be given preclusive effect against a subsequent judicial proceeding). *Cf. MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) ("As for finality, a valid and final award by arbitration generally has the same effect under the rules of res judicata as a judgment of a court.").

Claims for breach of contract, defamation, fraudulent inducement, and economic duress are arbitrable. *See Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (employee's defamation claim against employer fell within scope of arbitration clause in employment contract, where arbitration clause stated that 'all disputes or controversies arising under or in connection with' the agreement would be settled exclusively by arbitration"); *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 636 (5th Cir. 1985) (clause requiring arbitration of dispute "with respect to the interpretation or performance" of agreement was sufficiently broad to include claim that contract modifications were invalid because of economic duress)*; Encore Productions, Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, (D. Colo. 1999) (claim breach of contract and related covenant of good faith and fair dealing under Colorado law was subject to arbitration under comprehensive arbitration provision of contract); *NOS Communications, Inc. v. Robertson*, 936 F. Supp. 761, 766 (D. Colo. 1996) (plaintiff's fraudulent inducement claim should be arbitrated where there is a broad arbitration clause); *Lee*

5

*v. Grandcor Medical Systems, Inc.*, 702 F. Supp. 252, 256 (D. Colo. 1988) ("general arbitration clause covers a claim that the plaintiff was fraudulently induced to enter into the underlying agreement"); *Stone v. Vail Resorts Development* Co., No. 09-cv-02081-WYD-KLM, 2010 WL 2653314 (D. Colo. July 1, 2010) (breach of contract claims subject to arbitration); *Adams v. Modernad Media, LLC*, No. 12-cv-00513-PAB-MEH, 2013 WL 674024, at * 4 (D. Colo. Feb. 25, 2013) (given broad scope of arbitration clause, court found claims for breach of contract and fraudulent misrepresentation subject to arbitration). Courts have also concluded that federal claims for employment discrimination are arbitrable. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 267 n. 9 (2009) ("nothing in the text of Title VII . . . precludes contractual arbitration"); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (holding that plaintiff's ADEA claim was subject to arbitration); *Arciniaga v. General Motors Corp.*, 460 F.3d 231, 234, 238 (2d Cir. 2006) (finding discrimination claim asserted under 42 U.S.C. § 1981 arbitrable); *Metz v. Merrill Lynch, Pierce, Fenner and Smith*, 39 F.3d 1482, 1487 (10th Cir. 1994) ("Title VII claims are subject to compulsory arbitration.") (citation omitted); Notes to 42 U.S.C. § 1981, Alternative Means of Dispute Resolution ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title").

Ms. Adams's claims for violation of § 1981, Title VII, the ADEA, for fraudulent inducement and economic duress in entering the Operating Agreement, for defamation and libel, and for declaratory judgment that the Operating Agreement is void and unenforceable are all encompassed by issue preclusion. The parties fully arbitrated the matters initiated by Ms. Adams against FedEx. In the arbitration, Ms. Adams complained of wrongful termination of the Operating Agreement based on "[r]etaliation and [d]iscrimination based on sex, race and age." (*See* Doc. # 26-2). The arbitrator decided "the evidence is clear that the problems experienced by Federal Express Ground with this non-driving contractor claimant (LaFaye Adams) were

6

overwhelming and unprecedented" and that "[t]hese problems also operated as breaches of" the Operating Agreement.  (*See* Doc. # 26-3 at 2 of 3).  The arbitrator denied all claims asserted by Ms. Adams, including her claims for "[w]rongful termination and unclean hands by Fed Ex Ground.  Retaliation and Discrimination based on sex, race and age." (*See id.* at 3 of 3).  The arbitrator found that the grounds for termination of the Operating Agreement were "overwhelming and unprecedented . . . problems," not discrimination based on race, gender, or age.  (*See* Doc. 26-2 at 2 of 3).  Ms. Adams's allegations in this lawsuit that the termination of the Operating Agreement was discriminatory were raised and rejected in the arbitration.  The arbitration fully concluded to a final award, which Ms. Adams never moved to vacate. "Collateral estoppel precludes the relitigation of factual or legal issues that were decided in a previous case, regardless of whether that case was based on the same cause of action."  *Wilner v. Budig*, 848 F.2d 1032, 1034 (10th Cir. 1988).

      Ms. Adams argues that collateral estoppel should not apply because she "did not have the full and fair opportunity to be heard nor challenge Mark Harris' testimony" in the arbitration and that the "issues here were not identical to the issue that was actually determined" in the arbitration.  (*See* Doc. # 48 at 12 of 27).  The Operating Agreement, Ms. Adams's Demand for Arbitration, and the Award of Arbitrator all belie her argument and conclusory allegation that she did not have a full opportunity to be heard.  (*See* Doc. # 55 at ¶ 114).  Ms. Adams's claims for discrimination based on race, gender, and age, and for Fraudulent Inducement, Economic Duress, and Defamation and Libel are all claims covered by the arbitration clause in the Operating Agreement.  They are essentially the same claims she arbitrated, that the Operating Agreement was terminated for an improper purpose, including discrimination based on race, gender, and age.  (*See* Doc. # 26-3 at 1; *Brown v. Wheat First Securities, Inc.*, 257 F.3d 821, 827–828 (D.C. Cir. 2001) (civil rights claim arising out of same events that were the subject of arbitration was barred by collateral estoppel)).  Ms. Adams did

7

not previously challenge the final arbitration award. In fact, she represents that she is not challenging the validity or result of the arbitration in this lawsuit. (*See* Doc. # 48 at 13 of 27 ("Plaintiff is not attempting to challenge the Arbitrator's authority or vacate the award of Breach of Contract.")). Collateral estoppel bars Ms. Adams from reasserting claims challenging the termination of the Operating Agreement that she failed to prove in the arbitration.

B.   Third Claim for Relief against All Defendants for Violation of § 1983

Title 42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970). To assert her claim under § 1983, Ms. Adams must allege a deprivation of a federal or constitutional right by a person acting under color of state law. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). Section 1983 does not impose liability in the absence of action taken under color of state law. *Adickes*, 398 U.S. at 150. *See also American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful'"). If the conduct of Defendants does not qualify as state action, then the inquiry into § 1983 liability ends. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted). Purely private conduct is not under color of state law unless that conduct is furthered by actual or purported state authority. *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995). *See also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (court must determine whether private party's "conduct has sufficiently received the

imprimatur of the State so as to make it 'state action' for purposes of the Fourteenth Amendment"); *Marchese v. Mt. San Rafael Hosp.*, 24 F. App'x 963, 964 (10th Cir. 2001) ("Although private parties may be held liable in certain circumstances, a plaintiff must show that the party's conduct is fairly attributable to the State.").

Ms. Adams's claim is based on a legal conclusion without sufficiently alleged supporting facts. Other than a single conclusory allegation that Defendants "were acting under the color of law" (*see* Doc. # 55 at ¶ 143), Ms. Adams alleges no facts and makes no arguments that Defendants are state actors. (*See* Doc. # 55; Plaintiff's Response to Motion to Dismiss (Doc. # 48)). As Ms. Adams has not alleged facts sufficiently plausible to suggest that Defendants were functioning in any capacity other than as private actors, her Third Claim for Relief is properly dismissed for failure to state a claim to which relief can be granted.

C.      Fifth Claim for Relief against All Defendants for Violation of Equality Act of 2010

Ms. Adams alleges that Defendants violated "The Equality Act 2010." (*See* Doc. # 55 at ¶¶ 8(D), 164-175). The Equality Act of 2010 is a British law. *See* Equality Act, 2010, c. 15 (U.K.), Part 1. (available at http://www.legislation.gov.uk/ukpga/2010/15/pdfs/ukpga_20100015_en.pdf). The Equality Act 2010 brought "nine separate statutes prohibiting discrimination in Britain together into a single Act." Iyiola Solanke, *Infusing the Silos in the Equality Act 2010 with Synergy*, 40 Indus. L.J. 336, 343 (December 2011). "Similarly to the United States' Title VII protected classes, Britain also has legislatively established classes against which an employer cannot discriminate." Jeremy Corapi, *Red Card: Using the National Football League's "Rooney Rule" to Eject Race Discrimination from English Professional Soccer's Managerial and Executive Hiring Practices*, 23 Fordham Intell. Prop. Media & Ent. L.J. 341, 381 (Autumn 2012). "Britain's Equality Act of 2010, which amended its Equality Act of 2006, provides that it shall be illegal for any employer to discriminate against any individual based on age, disability, gender

reassignment, marriage or civil partnership, pregnancy or maternity, race, religion or belief [(including lack of belief)], sex, [or] sexual orientation." *Id.* (internal quotation marks omitted).

"The Act covers Great Britain (England, Wales and Scotland) but not Northern Ireland." B. Hepple, 'The New Single Equality Act in Britain' (2010) Equal Rights Review, 5. The Equality Act does not apply in Colorado. *See* Equality Act, 2010, c. 15 (U.K.), Part 1 (setting forth "[t]he authorities to which this section applies"); *Chilcott v. Hart*, 45 P. 391, 398 (Colo. 1896) ("it is clear that in this state acts of the British parliament passed since 1607 are not in force"). Ms. Adams argues that the Act "leaves it to tribunals to determine whether the law applies, depending for example on the connection between the employment relationship and Great Britain." (*See* Doc. # 57 at 3 of 8). Ms. Adams has alleged no facts to suggest that she had an employment relationship with Great Britain. Ms. Adams's claim for violation of the Equality Act 2010 must be dismissed for failure to state a claim to which relief can be granted.

D.   Sixth Claim for Relief against Defendant FedEx for Violation of CCPA

Ms. Adams alleges that Defendant FedEx engaged in deceptive trade practices under the CCPA. (*See* Doc. # 55 at ¶ 178). The CCPA outlaws deceptive trade practices in connection with the offering or sale of goods or services. Colo. Rev. Stat. § 6–1–105. A claim under the CCPA consists of the following elements: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo. 2003). If all elements of a CCPA claim are not met, the claim fails as a matter of law. *HealthONE of Denver, Inc. v. UnitedHealth Group, Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo.

2011).

"A CCPA claim will only lie if the plaintiff can show the defendant knowingly engaged in a deceptive trade practice." *Crowe v. Tull*, 126 P.3d 196, 204 (Colo. 2006) (citation omitted). To state the element that Defendants engaged in an unfair or deceptive trade practice, Ms. Adams must fulfill the heightened Rule 9(b) pleading standard. *HealthONE*, 805 F. Supp. 2d at 1120–21. *See also Cavitat Med. Techs., Inc. v. Aetna, Inc.*, No. 04–CV–01849, 2006 WL 218018 at *3 (D. Colo. Jan. 27, 2006) (holding that claims under § 6–1–105 of the Colorado Consumer Protection Act must be pled with particularity pursuant to Fed. R. Civ. P. 9(b)); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985) (holding that "Rule 9(b)'s requirement of particularity applies to a plaintiffs' allegations of deceptive trade practices under the Colorado Consumer Protection Act."). "Rule 9(b) requires a complaint to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *HealthONE*, 805 F. Supp. 2d at 1120–21 (internal quotation marks and citation omitted). "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *Tatten v. Bank of America Corp.*, ___ F. Supp. 2d ___, 2012 WL 6568475, at * 5 (D. Colo. Dec, 17, 2012) (internal quotation marks and citation omitted).

Ms. Adams argues that Rule 9(b) "only requires identification of the circumstances constituting fraud or mistake." (*See* Doc. # 48 at 22 of 27 (citing *Monus v. Colorado Baseball 1993, Inc.*, No. 95-1099, D.C. No. 93-S-2160, 103 F.3d 145, at * 3 (10th Cir. Dec. 17, 1996)). "That requirement means, in the instant case, that individual plaintiffs should identify particular defendants with whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative misstatements were allegedly made to them-and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them-and how." *Id.* Ms. Adams fails to meet this

pleading requirement. The SAC, Ms. Adams' fifth iteration of her pleading, does not identify with particularity the false statements, who made the false statements, or when the statements were made.

Even if Ms. Adams had adequately pled circumstances of fraud, she fails to sufficiently plead additional elements of a CCPA claim. First, Ms. Adams's allegation that the Operation Agreement made her an employee of FedEx is inconsistent with her allegation that she was a consumer of FedEx services for purposes of her CCPA claim. (*See* Doc. # 55 at ¶¶ 19, 21-23, 59-61, 91, 176-86). Ms. Adams also fails to allege a significant impact on the public as actual or potential consumers of FedEx's goods, services, or property. The CCPA is not intended to provide additional remedies to claimants whose disputes have no public impact but are, instead, purely private transactions. *Rhino Linings U.S.*, 62 P.3d at 150 (Colo. 2003). Considerations relevant to whether a challenged practice significantly impacts the public include: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings USA*, 62 P.3d at 149. Ms. Adams does not specifically allege the number of consumers affected, the relative sophistication or bargaining power of any consumers, or the previous or significant potential impact on any consumer. She merely alleges that FedEx induced her and "over 3,000" persons to enter into the Operation Agreement. (*See* Doc. # 55 at ¶ 179). Ms. Adams's arguments in her Response, that she is an individual with less bargaining power and that FedEx may enter into additional business agreements with other persons, do not cure her failure to state facts that support a significant public impact. (*See* Doc. # 48 at 19 of 27). Ms. Adams's allegations, individually or in concert, are conclusory and insufficient to support a CCPA claim. *See, e.g., Johnstown Feed & Seed, Inc. v. Continental Western Insurance Company*, 641 F. Supp. 2d 1167, 1181 (D. Colo. 2009)

("the fact that a workers' compensation insurer and an insured have a dispute over a claim does not necessarily mean that other members of the public are or have been affected by the insurer's practices") (quoting *Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 155 (Colo. 2007)).  As Ms. Adams fails to plead the elements of a CCPA claim, including the particularity requirement for pleading for fraud, her CCPA claim is properly dismissed.

E.     Seventh Claim for Relief Alleging Economic Duress

Ms. Adams alleges a claim for "Economic Duress," arguing that she was coerced to arbitrate her dispute with FedEx regarding the termination of the Operating Agreement.  (*See* Doc. # 55 at ¶¶ 196-203).  Even if Ms. Adams's claim for Economic Duress were not barred by collateral estoppel, it fails to state a claim to which relief can be granted.  "A contract is voidable on the grounds of duress if a party's manifestation of assent is induced by an improper threat that leaves no reasonable alternative."  *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 521 (Colo. App. 2006) (internal quotation marks and citation omitted).  "[W]hile economic duress can be pleaded as an equitable defense to a contract claim, it cannot be affirmatively pleaded in an action at law as a tort claim to collect money damages."  *Duell v. United Bank of Pueblo*, 892 P.2d 336, 342 (Colo. App. 1994).  As this civil action lacks a breach of contract claim, Ms. Adams's claim of economic duress is properly dismissed for failure to state a claim to which relief can be granted.

F.     Tenth Claim for Relief for Declaratory Judgment

Even if Ms. Adams's claim for Declaratory Judgment were not barred by collateral estoppel, in light of the court's recommendation that the First through Ninth Claims for Relief be dismissed, there are no rights left for the court to declare; thus, Ms. Adams's claim for declaratory judgment is moot.

G.    Defendants' Additional Arguments

Based on its determinations, above, the court need not at this time reach the additional grounds for dismissal raised by Defendants, *i.e.,* that Ms. Adams was an independent contractor and not an employee, that she did not timely file her administrative remedies for her civil rights claims, and that her state law claims are barred by the applicable statutes of limitations.

Accordingly, IT IS RECOMMENDED that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (filed June 21, 2012) (Doc. # 26) be GRANTED and this civil action be dismissed in its entirety.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de*

*novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 1st day of March, 2013.

BY THE COURT:

s/Craig B. Shaffer  
United States Magistrate Judge